**STATE & COUNTY MUTUAL FIRE IN-
SURANCE COMPANY, Appellant**

v.

**Mattie KINNER, Appellee.**

No. 3571.

Court of Civil Appeals of Texas.

Waco.

May 28, 1958.

Rehearing Denied July 10, 1958.

W. L. Eason, Waco, for appellant.

Anderson & Eichelberger, Waco, for appellee.

TIREY, Justice.

Appellee brought this suit to recover total coverage on house and furniture by virtue of a fire insurance policy executed and delivered to her by appellant. At the close of plaintiff's evidence, appellant submitted its motion for an instructed verdict, which was overruled, and after all parties had rested the court submitted seven issues to the jury. Absent the burden of proof clause, they are substantially as follows:

1) Do you find that on or after the 26th day of January, 1957, the State and County Mutual Fire Insurance Company, its agents, servants or employees, had notice that the property covered by the insurance policy in question was not solely owned by Mattie Kinner, to which the jury answered "It did have."

2) Do you find that the defendant, State and County Mutual Fire Insurance Company, its agents, servants or employees, after having had notice that the property was not owned solely by Mattie Kinner, if you have so found, did not deny liability but made investigations regarding such loss and demanded of Mattie Kinner certain information as it related to such loss, to which the jury answered "Yes."

3) Do you find that the defendant, State and County Mutual Fire Insurance Company, acting by and through its agents, servants or employees, by its failure to deny liability and by its investigation of such loss and demands for additional information regarding the same, if you have so found, after notice that such property was not solely owned by Mattie Kinner, waived the provisions of said policy relating to the sole ownership?, to which the jury answered "It waived."

4) Do you find that Mattie Kinner within ninety-one days after the fire loss herein complained of presented to the defendant, State and County Mutual Fire Insurance Company, a proof of loss as re-

quired by said policy of insurance?, to which the jury answered "She did."

5) Do you find that the defendant, State and County Mutual Fire Insurance Company, by reason of its request for additional information and its investigation of said claim, and the delay from the 21st day of January, 1957, to July 22, 1957, in completing its investigation of such claim, waived the presentment of proof of loss?, to which the jury answered "It did."

6) Do you find that the loss occasioned by the fire was due to the kerosene stove?, to which the jury answered "No."

7) What do you find to have been the reasonable market value, if any, on the 21st day of January 1957, of the furniture owned by Mattie Kinner, lost in such fire?, to which the jury answered "$1000.00."

The court granted appellee's motion for judgment, which followed the verdict and awarded to her the sum of $2,000 and overruled appellant's motion for judgment non obstante veredicto and appellant seasonably filed its amended motion for new trial and it being overruled, appellant perfected its appeal to this court.

Appellant assails the judgment on what it designates as twenty points. It divides the first 16 points into two groups. In the first group it says that the court erred in overruling defendant's motion for judgment non obstante veredicto and says in effect that this motion should have been granted because the court refused to charge the jury to return a verdict for defendant on the item covering $1,000 on the building and in refusing to charge the jury to return a verdict on the item covering household goods; that the verdict should be set aside because the policy provides that the defendant "shall not be liable for loss or damage to any property not owned in its entirety by the insured, or on which there is any kind of mortgage, lien or encumbrance, whether valid or not; or on a building situated on ground not owned by the insured in fee simple," appellant contend-

ing that the evidence is uncontradicted that appellee did not own the ground in fee simple, nor the household goods in their entirety. Points 6, 7 and 8 are to the same effect. Point 9 is to the effect that the answer of the jury to each of the issues is immaterial and contrary to the uncontradicted evidence and should be disregarded; 10, that the answer of the jury to Special Issue No. 1 should be disregarded because notice to the defendant that the property was not solely owned by the plaintiff was wholly immaterial and cannot fix liability against defendant under the terms of the policy; 11, that the answer of the jury to Issue 3 should be disregarded because it is immaterial and an investigation and demand for additional information after notice that plaintiff did not solely own the property would not constitute a waiver and would not create liability under the terms of the policy.

The second group, beginning with point 12, is to the effect that appellant was entitled to a directed verdict because the uncontradicted evidence shows that appellee failed to make a proof of loss as required by the terms of the policy within 91 days; 13, that proof of loss was not waived; 14, that the answer of the jury to Issue 2 should be disregarded because the investigations regarding the loss and demand on defendant for information is wholly immaterial and will not create a liability against defendant because investigations and demands cannot fix a liability where there is none under the terms of the policy; 15, that the answer of the jury to Issue 4 should be disregarded because there is no evidence showing or tending to show that the plaintiff presented to defendant a proof of loss as required by the policy within 91 days after the fire; 16, the answer of the jury to Issue 5 should be disregarded because the investigation and delay mentioned in the special issues is wholly immaterial and in law could not waive the presentment of the proof of loss.

Points 17, 18, 19 and 20 are to the effect that appellant was entitled to a directed

verdict in its favor because the uncontradicted evidence shows that the hazard had been increased by an oil stove and that the fire originated therefrom and that such fire was the occasion of the loss, and that the court should disregard the answer of the jury to Issue 7 because there is no evidence showing or tending to show the market value of the property, or any part thereof, as the only witness who testified to value failed to qualify; that the answer of the jury to Issues 4 and 5 are contradictory because in answer to Issue 4 the jury found that plaintiff presented to defendant a proof of loss as required by the terms of the policy and by its answer to Issue 5 found that the defendant waived the presentment of the proof of loss.

A statement is necessary. Appellee sought recovery on the insurance policy issued and delivered to her by appellant, which policy provided, among other things, that the building on the premises was insured to the amount of $1,000 and the furniture to the amount of $1,000. Appellee and her husband, Tobe Kinner, purchased this property in October 1917 and used and occupied it as a homestead thereafter. Tobe Kinner died about 1935. Appellee continued to use and occupy the premises as her homestead from that time, up to and during the trial of this cause. All of the property, both real and personal, was the community property of appellee and her husband. Five children were born to appellee and her husband, and all but one survives. There is an absence of testimony as to whether Tobe Kinner died testate or intestate or whether there was any administration upon his estate. There has been no partition. The deed to the property was tendered in evidence and it conveyed a fee simple title to Tobe Kinner. Testimony was tendered to the effect that appellant issued and delivered this policy of insurance to appellee about seven years before the date of the fire in January 1957, and that appellee had continued to pay the premiums thereon as required by the terms

of the policy, and that all premiums were paid in advance at the time of the fire.

Appellee, in her pleadings, specially pleaded that "Said policy being for One Thousand ($1000.00) and No/100 Dollars coverage on the dwelling house belonging to the Plaintiff located at 910 South 3rd Street in Valley Mills, Texas, and One Thousand ($1000.00) and No/100 Dollars on the furniture located therein." The policy in suit, among other things, contains the following provision: "It is expressly understood and agreed that this Company shall not be liable for loss or damage to any property not owned in its entirety by the insured or on which there is any kind of mortgage, lien or encumbrance, whether valid or not; or on a building situated on ground not owned by the insured in fee simple." Appellant specially plead this provision in defense of appellee's cause of action. It was admitted that appellant's policy on appellee's property had a coverage of $1,000 on the house and $1,000 on the furniture. The house and the furniture were a total loss.

Appellant has two propositions which are grounded upon Points 1 to 11, inclusive. The first one is to the effect that the appellee did not own in fee simple the ground on which the building was situated and, therefore, the building was not covered by the policy; that the personal property was not owned in its entirety by the plaintiff and, therefore, it was not covered by the policy; and that under the foregoing contention the court erred, first, in refusing to grant its motion for a peremptory instruction, and failing so to do, the court again erred in refusing to grant its motion for judgment non obstante veredicto.

■ We overrule the foregoing contentions. This court, in Mercury Fire Ins. Co. v. Dunaway, 74 S.W.2d 418, 419 (writ ref., opinion by the late Justice Alexander), had before it substantially the same provision, and in discussing said provision said: "It is well settled in Texas that a husband

may procure a policy of fire insurance on community property in his own name without violating such a provision." Citing a long list of cases, among them East Texas Fire Ins. Co. v. Crawford, Tex., 16 S.W. 1068. "If the husband can thus procure a policy on community property in his own name without violating such a provision, why cannot the wife do likewise? The rights of the husband and wife in community property are unified and equal and their title thereto and interest therein is the same." Citing cases. "Any loss that would result from the burning of community property would fall as much on the wife as on the husband, and hence she is equally interested with him in protecting the property against loss by fire." Our Supreme Court has not seen fit to change the rule here stated. See also British Gen. Ins. Co. v. Stamps, Tex.Civ.App., 57 S.W.2d 638 (no writ history, opinion by Chief Justice Hickman and cases there cited). In Dean v. Pioneer Cooperative Ins. Ass'n, 231 F.2d 18, 21, our Fifth Circuit Court of Appeals had before it a Texas Standard Fire Insurance policy, and with reference thereto made this statement: "Texas declines to read into insurance policies the rigid rules of property title law." Citing many Texas cases.

Appellant, in discussing the foregoing policy provision relied upon by it to defeat appellee's claim, says: "The question here presented is very simple. It can be stated in one sentence to-wit: 'The property destroyed by fire was not covered by the policy in suit.' The property destroyed and the loss or risk were expressly excepted from the coverage of the policy." It is obvious from the decisions here cited that appellant's contention is without merit.

Appellant has grouped his points 12 to 16, inclusive, under one argument and with reference thereto says that appellee is not entitled to recover because she failed to make proof of loss as required by the terms of the policy.

The evidence is without dispute that the appellee reported, or caused to be reported, her loss before January 29, 1957. T. W. Payton, President of the Company, testified in part as follows:

"Q. * * * Did you or did you not receive an itemized list of the property, the personal property, that was destroyed in this fire? A. Yes.

"Q. You received that. Do you have that list here today? A. No.

"Q. Isn't it a fact, Mr. Payton, that's the proof of loss that you told the jury she never did file? A. No.

"Q. An itemized statement of every item? A. No.

"Q. Why didn't you bring it, Mr. Payton? A. I don't have it.

"Q. Where is it? A. I don't know. * * *

"Q. I will ask you, have you ever at any time during this seven years that your company has carried this insurance on this widow's house, have you ever at any time questioned any part of the application that she made to your company for the insurance in the beginning? * * * A. Not to my knowledge.

"Q. You have continued for seven long years to accept her premium payments? A. Whatever the date of the policy is.

"Q. Have you ever at any time tendered her a refund on any premiums? A. Not to my knowledge.

"Q. Has anybody in behalf of your company tendered her any refund premiums? A. Not to my knowledge.

"Q. You do have in your file on her case, you do have her original application, do you not? A. We do, for this policy. * * *

"Q. How long does it ordinarily take you to complete an investigation by your company? A. That depends upon the cooperation.

"Q. But it's your testimony that the fire occurred around the 23rd of January— A. The 21st of January.

"Q. Well, whatever it shows—and that this suit was filed on the 22nd day of July 1957. In six months you hadn't completed your investigation. A. *I got a complete proof of loss.*

"Q. And you haven't tendered any refunds on any premiums. A. Not a nickel."

It is true that Mr. Payton also testified in part: "Q. Now, in this policy there is a provision with reference to a proof of loss is there not? A. Yes. Q. I'll ask you whether or not a proof of loss, in compliance with that provision, was ever made to this company? A. No, sir." But the jury chose to believe the former statement. Since Mr. Payton, President of the Company, testified that he got a complete proof of loss, appellant's contention in this behalf must necessarily fail.

■ Appellant contends in its 17th and 18th points that it was entitled to a directed verdict in its favor because the evidence is uncontroverted to the effect that the hazard was increased by virtue of an oil stove that was used in the building, and that the fire actually originated therefrom, and that by reason thereof the loss was occasioned by fire that originated in the oil stove. It is true the testimony shows that there was an oil stove in the kitchen but the witness, Ruby Miller, testified to the effect that she cooked dinner on the oil stove on the day of the fire, and that she started cooking about 10:00 in the morning and got through about 11:00 o'clock in the morning; that when she finished cooking she cut off the stove; that the children came from school to lunch and ate at 12:00 noon; that after lunch they went back to school about 12:15 or 12:30; that after the children left, she went to the house of a girl friend; that she was in the kitchen before she left and that the stove was not burning and that there was no fire around the stove; that

her husband was at home asleep and she did not awaken him for lunch and did not awaken him before she left.

Reuben Miller, the husband, testified to the effect that he was at home asleep on a couch on the day of the fire, and that a noise woke him up; that he had some 22 shells in the attic of the house; that he had a rifle and that it and the shells were in the attic so the children could not get to them; that the house was wired for electricity and that the shells in the attic were exploding and that that woke him up. He testified:

"Q. Now, when you were standing out there talking to Nathan had the fire got up into the attic? A. Yes, sir, I am sure it had because that's where it was—well, the whole kitchen was ablaze, and about all I could see was the washing machine sitting over there. The washing machine was close to that door right there. * * *

"Q. Did you ever hear any loud explosions, other than the bullets? A. No, sir. The stove was out.

"Q. The stove was out. A. Yes, sir, it wasn't lit."

■ It is well settled in Texas that whether a tenant's occupancy renders risk on a fire insurance policy more hazardous is a question of fact. See Dixie Fire Ins. Co. v. Henson, Tex.Com.App., 285 S.W. 265 (judg. adopted by S.Ct.). Our Supreme Court has not seen fit to change this rule. See also Home Ins. Co. v. Currie, 5 Cir., 54 F.2d 203, and Centennial Ins. Co. v. Ramsey, 5 Cir., 193 F.2d 640.

It is true that appellant specially pleaded the provision of the policy with reference to having a gasoline or kerosene stove on the premises, but it submitted no requested issue thereon, nor did it specifically except and object to Issue 6 of the court's main charge.

■ As a reviewing court, it is our duty to consider the evidence and the in-

ferences properly to be drawn therefrom in the light most favorable to the party obtaining the verdict, and it is our duty in considering controverted issues of fact to accept as true that testimony which tends to support the verdict. 3–B Tex.Jur. pp. 370 and 372. See also Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, points 1 and 2, 23 A.L.R.2d 1114; Liedeker v. Grossman, 146 Tex. 308, 206 S.W.2d 232, points 4, 5 and 6. Moreover, "Where the facts are controverted, or are such that different inferences may be reasonably drawn therefrom, an issue of fact is raised; it is only where the evidence is harmonious and consistent, and the circumstances permit of but one conclusion, that the question becomes one of law for the determination of the court. An issue of fact is raised 'if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff.'" (Citing cases.) See Olds v. Traylor, Tex.Civ.App., 180 S.W.2d 511, 514, points 8 and 9, writ ref. Moreover, " 'It was the jury's province to weigh all of the evidence, to decide what credence should be given to the whole or to any part of the testimony of each witness. "The jury were the judges not only of the facts proved, but of the inferences to be drawn therefrom, provided such inferences were not unreasonable." '" See Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, at page 199, point 6. No rule is better settled than the one to the effect that if there is evidence of probative value to sustain the findings of the jury, the appellate court is bound by such findings. See Lynch v. McLendon, Tex.Civ.App., 283 S.W.2d 88, point 3 (no writ history) and cases there collated. See ICT Ins. Co. v. Gunn, Tex.Civ.App., 294 S.W.2d 435, point at page 441 (n. r. e.); Continental Cas. Co. v. Baker, Tex.Civ. App., 297 S.W.2d 706 (n. r. e.).

The testimony tendered in this cause, including exhibits, is a little over 200 pages.

We have read it all very carefully and we are of the view that the evidence is sufficient to support the jury's answers to each of the issues submitted to it.

But appellant contends in his second proposition that "the statute with reference to liquidated demand on buildings is not applicable to the case at bar because the defendant company is a mutual company and it is expressly exempted from the statute above mentioned." Appellant specially pleaded that "the defendant says that it is not incorporated under the General Laws of the State of Texas, but that it is incorporated under a special act of the Legislature, being Acts of 1951, 52nd Leg., Chap. 491, the title thereof being "County Mutual Insurance Company." Mr. Payton, among other things, testified to the fact that the appellant was a mutual company.

Art. 6.13 of the Insurance Code, V.A. T.S., provides:

"A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property.

"On and after January 1, 1951, the provisions of the preceding paragraph of this article shall be incorporated verbatim in each and every fire insurance policy hereafter issued as coverage on any real property in this State; and it shall be the duty of the Board of Insurance Commissioners, by proper order and procedure, to compel compliance with this statute."

Art. 17.22 of the Insurance Code provides:

"County mutual insurance companies shall be exempt from the operation of all insurance laws of this State, except as herein specifically provided."

This Article was amended by the Acts of 1955, 54th Leg., p. 413, chap. 117, sec. 37.

Art. 17.23 of the Insurance Code provides:

"By-laws of the company shall always constitute a part of the contract with the insured and the policy shall so state."

The judgment contains the following recital:

"And the court, after having considered the verdict and such other additional considerations and findings as were authorized by law having been had and made, the court is further of the opinion and so finds from the pleadings, testimony and evidence that the improvements insured by the defendant has a reasonable value in excess of $1000 and that the same were completely and totally destroyed, the court is of the opinion that judgment should be rendered for the plaintiff as follows: * * *."

The foregoing articles were construed by our Beaumont Court in Southland County Mutual Ins. Co. v. Denison, Tex.Civ.App, 276 S.W.2d 562, 565 (n. r. e.) and in that opinion we find this statement: "Appellant did not plead or prove that it had provided by its by-laws that the requirements of Article 4929, now Article 6.13, Insurance Code, did not apply to the policy sued upon, as it was authorized to do under Article 4860a–20, Sec. 6, R.C.S., now Article 17.06, Insurance Code. Apparently it had not so provided or it would not have issued the policy subject to Article 4929. Having issued the policy subject to Article 4929, it is bound thereby." That is the exact situation here before us. Appellant made no reference in his pleadings to the by-laws, nor did it introduce such by-laws, so appellant stands before the court without any pleadings as to its by-laws and without having tendered any by-laws in evidence as constituting a part of the policy, and under the foregoing decision its contention is without merit. It is a well established rule in Texas that contracts of insurance in Texas must be construed in the light most favorable to the insured. See Continental Cas. Co. v. Warren, 152 Tex. 164, 254 S.W.2d 762; Providence Washington Ins. Co. v. Proffitt, 150 Tex. 207, 239 S.W.2d 379.

Perhaps we should also state that our Supreme Court has consistently held in effect that where a building is so injured by fire as to lose its specific character as a building, it is a total loss within the terms of an insurance policy. That is the exact situation here. See Hamburg-Bremen Fire Ins. Co. v. Garlington, 66 Tex. 103, 18 S.W. 337, 59 Am.Rep. 613. See also 22 Tex.Dig. Insurance, for collation of authorities.

We have considered each of appellant's points and each is overruled.

The judgment of the trial court is affirmed.

HALE, J., took no part in the consideration and disposition of this case.